## STATE OF MAINE *vs.* N. J. HANNA.

### Knox.    Opinion November 14, 1904.

*Fish and Fisheries.   Extortion.   Stat. 1887, c. 285, § 39.   1897, c. 285, §§ 28, 48.
1899, c. 81, §§ 1, 3.   R. S., 1883, c. 118, § 23.   1903, c. 41.
§§ 2, 17, 61; c. 119, § 23.*

The Revised Statutes, ch. 41, § 17, provide that no person shall have in his possession any lobster less than ten and a half inches in length, and fixes a penalty for violation of this provision at one dollar for each lobster. Section 61 of the same chapter provides that all fines and penalties for having "short" lobsters in possession may be recovered by complaint, indictment or action of debt, that the action of debt shall be brought in the name of the commissioner of sea and shore fisheries, and that all offenses under the provisions of the statute, forbidding having short lobsters in possession, may be settled by the commissioner upon such terms and conditions as he deems advisable.   *Held:* —

1.   The Commissioner of Sea and Shore Fisheries has authority to settle offenses of this character without suit or prosecution.

2.   It is not unlawful for him to advise, persuade or urge any offender to settle.   He may even go to the extent of pointing out that the alternative will be a criminal prosecution.

3.   He may authorize one of his wardens to make demand for payment of the penalty incurred.

4.   Such warden has no authority to "settle" with an offender.   But this case shows that he did not attempt to "settle," he simply carried out the instructions of his superior, the commissioner.

5.   For a fish warden, acting under the instructions of the commissioner, and without malicious, corrupt or oppressive intent, to write to an offender that his lobster case is not yet settled, that he owes the state nine dollars, and that unless he sends that amount to the commissioner before a date named, he (the warden) is ordered to take defendant's case to the grand jury, does not constitute maliciously threatening to accuse another of crime, within the meaning of section 23 of chapter 119, Revised Statutes.

On report.   Judgment for defendant.

Indictment under chap. 118, § 23, of the Revised Statutes of 1883, charging the defendant with extortion.   By agreement the case was withdrawn from the jury and reported to the Law Court upon so much of the evidence as was legally admissible.   If the decision of

the court is that the act of the respondent charged in the indictment, which it was agreed was performed by order of the Fish Commissioner, was a violation of section 23 of chapter 119 of the Revised Statutes of 1883, then judgment is to be entered for the state, otherwise for the respondent.

*Philip Howard,* County Attorney, for State.

To extort under statutes of this kind means to obtain such money or other advantàge by means of the wilful and malicious threatening. *Commonwealth* v. *Coolidge,* 128 Mass. 55.

If the threat was wilfully made, with the intent to extort money, it was a malicious act, and the fact that the charge was true would be immaterial. *Commonwealth* v. *Buckley,* 148 Mass. 27.

The wilful doing of an unlawful act without excuse is ordinarily sufficient to support the allegation that it was done maliciously and with criminal intent. *Commonwealth* v. *Scott,* 122 Mass. 33.

The form of the words alleged to be a threat is unimportant if they sufficiently convey the idea. *State* v. *Patterson,* 68 Maine, 473.

Not the accusation, but the threat to make it, constitutes the crime. Bishop New Crim. Law, Par. 1201.

Immaterial whether person threatened is guilty or not, for in either case there is an attempt to pervert justice. The threat needn't be successful. Bishop as above.

Whether the purpose and intention of the defendant was to extort money is purely a question of fact. *Commonwealth* v. *Coolidge,* supra; *Commonwealth* v. *Buckley,* supra.

Evidence that the person threatened, in fact committed the crime inadmissible on question of intent and malice. *Commonwealth* v. *Coolidge,* supra.

The threat may be of a general character, indicating not the accusation of any particular crime or offense, but the accusation of some offense or other. *Commonwealth* v. *Goodwin,* 122 Mass. 31; *State* v. *Robinson,* 185 Maine, 195.

*Merritt A. Johnson,* for defendant.

The Statutes of Maine present the authority under which the warden and the commissioner have acted. Have they usurped their

powers? The provision of section 71 seems to be specific wherein it sets out, "And all offenses under, or violations of, the provisions of this statute, may be settled by the commissioner of sea and shore fisheries, upon such terms and conditions as he deems advisable."

I take these words to mean that the commissioner may do just what the letter in this case purports; that is, he may settle all offenses under or violations of the provisions of said chapter, whether such offenses and violations have been brought before the courts or not. In other words, it is left with the commissioner to dispose of all offenses and violations of said chapter as he deems for the best interest of the state so to do. This would allow him to sift the case and to take into consideration the enormity of the offense, the situation of the parties, and in short the best interests of the state and all concerned with the one end in view to stop the handling of short lobsters.

The giving of this power to the commissioner, probably arose from the fact that there are a large number of seizures of small importance for violations of the laws, where it seems best for the commissioner to dispose of them without reference to the courts where he can properly do so, rather than to present them to the courts and by such process the interest of the state be better served. Whether it is a wise policy is not the question raised here, although from the nature of the offenses under said chapter it would seem to be for the interest of the state to grant this power to the commissioner as it has.

The nature of the business makes it obligatory on the commissioner to delegate his authority to his subordinates. It would be an impossibility for the commissioner to cover the entire state in person and to do the entire work of his department. The law does not intend that he shall be so restricted, and provides specifically for the use of subordinates and what the authority of the subordinates shall be.

"No act, carefully performed, from motives which the law recognizes as honest and upright, is punishable as a crime. And it has always been held, that extortion proceeds only from a *corrupt* mind." Bishop on Criminal Law, Vol. 2, § 396.

"In this, as in every other crime, the intent is an essential ingredient. The extortion must be knowingly and with a corrupt motive. Under the statutes it seems to be generally held there must be

knowledge and corrupt intent whether the statute in terms requires that such should be the case or not.

In morals it is an evil mind which makes the offense; and this, as a general rule, has been at the root of criminal law. The consequence is, that it is not to be intended that this principle is discarded merely on account of the generality of statutory language.

It is highly reasonable to presume that the law-makers did not intend to disgrace or to punish a person who should do an act under the belief that it was lawful to do it."

"In an indictment charging the defendant with maliciously threatening to accuse a person named of a crime with the intent to extort money, the evidence offered as to the truth of the accusation might have an important bearing upon the question of the defendant's intent and should be admitted.

If the wrong which he offered to prove had in fact been committed, the demand which the defendant made for payment may have been without the intent to extort money necessary to constitute the crime alleged in the indictment." *Commonwealth* v. *Jones*, 121 Mass. 57; *Commonwealth* v. *Coolidge*, 128 Mass. 59.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J. The respondent stands indicted for a violation of section 23, of chapter 118, R. S. 1883, (R. S., c. 119, § 23) which provides that "whoever verbally, or by written or printed communication, maliciously threatens to accuse another of a crime or offense, or to injure his person or property, with intent thereby to extort money or procure any advantage from him, or to compel him to do any act against his will, shall be punished" etc. The case comes before us on report.

The evidence and admissions show the following facts. In November, 1900, one Allen Simmons at Friendship was found in the possession of nine "short" lobsters in violation of Public Laws of 1897, chap. 285, § 39, as amended by Public Laws of 1899, chap. 81, § 1. (R. S., c. 41, § 17). The penalty fixed by law

was one dollar for each lobster. The respondent, who was a duly appointed fish warden in Lincoln County, reported the fact to the commissioner of sea and shore fisheries. The commissioner, Nov. 6, 1900, wrote to Simmons about the matter, informing him that there was a fine of nine dollars due the state for the nine short lobsters found in his possession, and that he might settle by paying the fine on or before November 15, but received no reply. Afterwards the commissioner turned the case over to the respondent with instructions to write to Simmons, which he did, endeavoring to persuade Simmons to settle the matter. To this Simmons made no reply. In August or September, 1901, the commissioner ordered the respondent to proceed with the case. By this order, the commissioner intended,—and it was so understood by the respondent,—that if the latter could collect the penalty then, by giving the offender another chance, he might do so; otherwise, a prosecution was to be commenced. Thereupon the respondent wrote Simmons the letter which is complained of, which is as follows:—

Office of N. J. Hanna.

New Harbor, Maine.          New Harbor, Me. Sept. 22, 1901.

Fish and Game Warden

for Lincoln County.

Mr. Allen Simmons.

Sir.—Your lobster case is not yet settled. You owe the state $9.—and unless you send that amount to the Commissioner at Boothbay Harbor, the Hon. A. R. Nickerson, on or before September 6, I am ordered to take your case to the grand jury in Rockland this term. Let me hear from you immediately.

Very truly,

N. J. Hanna, Warden.

In the stipulations it is agreed that the letter was written by order of the commissioner.

Upon these facts, is the respondent guilty of the offense charged? We think not. The record is entirely barren of anything to show that the respondent acted with malicious, corrupt or oppressive intent, or that there was any intention of any kind to "extort" money

or procure any unlawful advantage from Simmons. On the contrary, malice and intended extortion are negatived. The respondent appears to have been proceeding regularly, and in good faith, under the instructions of his superior officer, the commissioner.

But it is contended on behalf of the state that the commissioner had no authority to collect, or to direct the respondent to collect, the fine in the manner attempted; that the threat, therefore, was for an unauthorized and unlawful purpose, namely, to obtain the money of Simmons or procure an advantage from him in an unlawful way; and that, in law, such a threat wilfully made was malicious. It will not be necessary to carefully criticise the conclusion of the state's argument, for we think the premise is unfounded.

The commissioner assumed to act under the provisions of Public Laws of 1897, ch. 285, § 48, as amended by Public Laws of 1899, ch. 81, § 3, (R. S. ch. 41, § 61,) which provides that "all fines and penalties under this act may be recovered by complaint, indictment or action of debt brought in the county where the offense is committed." The action of debt shall be brought in the name of the commissioner of sea and shore fisheries, and all offenses under, or violations of, the provisions of this statute [which forbids having short lobsters in possession] may be settled by the commissioner of sea and shore fisheries, upon such terms and conditions as he deems advisable. All fines, penalties and collections under this act shall be paid into the treasury of the county where the offense is committed, and by such treasurer to the state treasurer, to be added to and made a part of the appropriation for sea and shore fisheries." By Public Laws of 1897, ch. 285, § 28, (R. S., ch. 41, § 2.) it is provided that "wardens shall enforce all laws and the rules and regulations relating to the sea and shore fisheries, arrest all violators thereof, and prosecute all offenses against the same." Construing these two statutes together, the state contends that legal proceedings of some kind must be instituted by a warden against an alleged offender before the commissioner has authority to demand or receive payment of the penalty. We do not so understand the statute. It says that "offenses" may be settled by the commissioner. It does not say that "prosecutions" may be settled by him. It bestows upon the

commissioner a comprehensive and delicate power. It vests in him a discretion not possessed by the court. The court, upon conviction, must impose the penalty fixed by law, but the commissioner may "settle" offenses as he deems advisable.

It will be noticed that the provision for settling offenses is found in the text of the statute in close connection with the provisions for bringing the action of debt to recover a penalty in the name of the commissioner; and while it is unnecessary in this case to decide whether or not the power of the commissioner to settle extends to criminal prosecutions already commenced, — for here none had been commenced, — it must be clear that the commissioner is authorized to settle a civil action of debt commenced in his name. If he can settle a minute after a writ is made, why may he not do so a minute before? If an offender is caught red handed, and is willing to settle without suit, why should it be necessary to bring suit against him? We think it is not. The statute does not require it. We think it is permissible for the commissioner to settle before suit, or any other process, is instituted. This conclusion is fortified by the use of the word "collections" in the concluding sentence of the section, in which it is provided that "all fines, penalties and *collections* under this act shall be paid into the treasury of the county," etc. Earlier in the section it is provided that all "fines and penalties" may be recovered by complaint, indictment or action of debt." Here it is provided that all "fines, penalties and *collections*" shall be paid into the county treasury. Taken in connection with the other language of the section, the word "collections," if it means anything, seems to refer to moneys *collected,* and not to fines and penalties imposed and paid.

Now if it was lawful for the commissioner to settle with Simmons, it could not be unlawful for him to advise, persuade or urge Simmons to settle, even to go to the extent of pointing out to him that the alternative would be a criminal prosecution. The commissioner was seeking no more than he was authorized to collect, and he was seeking it in a lawful manner.

But at this point the state contends that whatever may have been the authority of the commissioner, it was authority vested in him personally, and could not be delegated to a warden. True. And it

is equally true that the commissioner did not attempt to delegate any authority to the respondent. He did not attempt to clothe the latter with any discretion to settle. The warden could not fix terms and conditions. He could not take less than the amount due. He could simply receive, if Simmons would pay. When the commissioner had exercised his discretion and had determined that Simmons ought to pay the full penalty, we perceive no illegality nor impropriety in his ordering a warden to make the demand.

In accordance with the stipulation the entry must be,

*Judgment for the defendant.*